Good morning, Your Honors, and may it please the Court. Rachel Robinson for Defendant and Appellant Edward Arao. I'd like to reserve three minutes for rebuttal. Counsel, you might want to raise the microphones a little bit. Is that better? Yeah, that's better. All right. And with the Court's permission, I'd like to start with our sufficiency challenge, but I think a lot of the analysis bleeds into the vagueness challenge as well. As this Court is well aware, Section 922A1A has a willfulness element, meaning that in this case, the government had to prove beyond a reasonable doubt that when Mr. Arao dealt in these firearms, he knew that his conduct was unlawful and he intended to disobey the law. The evidence in this case shows that Mr. Arao thought that he found a legal loophole to  Mr. Arao was the responsible party and CEO of a two-person FFL, Ronin Tactical. And every single thing he did in this case was done with and through Ronin Tactical. How can you say that when he transferred the guns from Ronin to himself and signed the as opposed to Ronin? That was the main problem I had with your argument, so help me understand that. Yeah, so the law in California and the government's expert testified that there's a legal secondary market in California, and that means that private parties can transfer these firearms. But it has to happen through an FFL, so the FFL has to facilitate that transfer. And in every single sale that Mr. Did the FFL sell the off-roster gun to a private person? Not in California. So he knew that if he wanted to sell it, it had to be transferred to him, a private person, in his private capacity. Isn't that correct under California law? Under California law, that's correct. And that's exactly what he did. He transferred it from the FFL to himself, a private person, so he could sell the off-roster gun to a private party. That's right, but he did so, again, through his FFL. But he didn't through his FFL. The FFL, as you point out, couldn't sell it. So it has to be through himself, a private person, which is exactly what he did. So if I can highlight the way that the government's expert testified as to how the law works in The expert was asked, under California law, can a licensed firearm sell an off-roster firearm to the general public? And he answered, not directly. And he said, there's an exception under the private party transfer where dealers can conduct that transfer through their licensed business, and that's at ER 391. And so it- But that's not what the law is. I mean, I'm just reading the statutes. The statute says the FFL can't sell to a private- an off-roster gun to a private party in California. Only a private person can do that. But the law also says that the FFL must facilitate it. And our position is that- Oh, right. But that isn't who sells it, right? So they fill out the forms and the like, and it's supposed to be done at the location of the FFL, which it wasn't in this case, not in every transaction. And so, you know, clearly the- Mr. Rao understood that he had to be a private party in order to sell the gun lawfully in California. So that made it hard for me to understand how he didn't know when he clearly did know and was using that loophole, as you point out. So I think that- this is a willfulness, so maybe we can get away from what maybe a reasonable person would have understood, or you look at the law, because you have to look at how Mr. Rao personally behaved. And in this instance, I think that the problem with the government's argument here is that Mr. Rao self-reported every single thing he did. So yes, his FFL didn't actually cover that second transfer, and we're not taking the position that it did. But when he signed every single document that he reported to the California authorities that he kept recorded so that the federal authorities could review his conduct, he did so- Signing the 4473 was also a violation because he didn't intend to actually keep the guns in his private capacity, but he turned around and sold it within a few days. So he was just acting as a straw man. That was part of the government's argument, if I'm understanding correctly. Right. Yeah, and if I could address that in two parts. The first is I'd point the court to the dissent in Abramski out of the Supreme Court, where the facts of Abramski are not directly analogous here, but Justice Scalia provides an example in his dissent, which is directly on point here, which is that when the man at the counter is the true purchaser, even if he immediately sells the gun to someone else. And it appears to be the government's position would be the same, even if the man at the counter did not sell it to a particular third party, so long as the two did not enter into a common law agency relationship. It's always a bad sign when you're relying on a dissent. Yeah, fair enough, but the facts in the majority don't align with the facts that we have here. And so we've taken the position that that's not a false statement. And- But it hardly supports his, oh, I complied with every jot and tittle of the law. Obviously, he had a setup where he transferred the gun to himself as a private party with no intent to keep it as a private party, but as part of his plan to then turn around and sell an off-roster gun to a private party in compliance with California law. So it's hard to see why that doesn't show he knew exactly what he was doing, as the government argues. I think it gets back to the fact that Mr. Arau had a reason to believe that because California law placed stricter requirements than the federal law, I mean, if we were in any other state, he could have done this through his FFL. He was trying to comply with California law, and he thought he found a loophole because in addition to complying with California law, he did have an FFL, and he signed every single document as- Well, he didn't personally have one. The question is, was he acting as the authorized agent of the corporation under its FFL? And I thought the defense took the position that he was not at that point, that it was a private transaction between him and the next purchaser. But it seems to me that this is all very similar to a straw buyer situation, is it not? If the weapon is transferred to him and he has no intention of holding onto it, but intends to immediately turn around and sell it to somebody else, isn't that a straw purchase? Well, to begin with, Mr. Arau isn't charged with straw purchases, and so this court in Hernandez made clear that even if the court finds that there may be evidence of intent for a separate crime, and in Hernandez it was straw purchases, that's not sufficient to prove willfulness to commit the charged crime. In essence, the charge here is that he was dealing in firearms without a license, that he was buying these firearms on his own behalf and not on behalf of the company for whom he was the responsible party. And the issue that went to the jury was whether or not he was willfully violating the statute. What you're arguing now, that he thought he was doing this and he knew that he had this, sounds like what was sent to the jury. And so why is that not the case? Why hasn't the jury resolved this already? Because we would take the position that the evidence that he understood he was violating the law here was speculative, and again I go back to the fact that he self-reported his conduct. The reason we're here, that's not someone who intends to violate the law, who understood he was violating the law, the reason we're here is because Mr. Arau put his name on every single document that he provided to the California authorities and that he gave to the federal authorities to review. If Mr. Arau had truly understood, and I appreciate that technically his FFL did not cover the conduct, we understand that, but if Mr. Arau had truly understood that his conduct violated the law, he could have gone to a different FFL every time he engaged in one of these on every single transaction the way it was. And I think, if I may, if the law were as obvious and clear as the government argues it is, that ATF notice to law enforcement in California would not have been necessary. The law enforcement sent out a notice in March of 2017 advising local California law enforcement, because again I think, and maybe I skipped over this, but there is an exemption in California which allows police officers to purchase and resell off-roster firearms in a way that the general public cannot. And ATF had to send out a notice educating California law enforcement officers that that conduct may, not was, but may be unlawful. Clearly it wasn't, clearly it wasn't clear. It was. It may be unlawful because the individual officer does not have a federal firearms license? That's what the ATF said. The ATF advised police officers that if they wanted to engage in this conduct, they must be licensed. And prepare a 4473 for each transaction? It doesn't say that specifically. But if you had an FFL, you would be required, would you not? That's right. And Mr. Arau did. Mr. Arau, as the FFL holder, prepared the 4473 forms. Well, you say he's the holder, but he... I'm sorry. Yeah, I mean, it's the, I'll call it the corporation. I don't know what form it was organized in, but that was the holder of the FFL. Right. And I'm sorry, it was just our position that Mr. Arau believed that because he, as the responsible party for the FFL... That he was, in essence, he had an FFL to cover it. That's correct. And he filled out the forms as such. But the regulations do not permit an FFL to simply transfer an off-roster firearm directly to a civilian who is not a law enforcement officer. That's correct. But in the ATF's notice, the ATF advised police officers that if you want to engage in this behavior of repetitively purchasing and reselling off-roster firearms, you have to get a license. That's not the case in California, because you have to engage in a private party transfer. But it was reasonable for someone like Mr. Arau, who's the responsible party of an FFL, to think, okay, ATF is telling me that if I want to engage in this conduct, I should have a license. In California, I'm required to engage in this two-step conduct, regardless of my status as a licensee, but I have a license. And I'm complying with California law when I engage in this two-step conduct. But to follow up on Judge Schroeder's question, it's not enough for you to make a good case, right? Because we have to say no reasonable juror could have thought, taking all the evidence in the light most favorable to the prosecution, could have thought otherwise. And what's the basis for that sort of determination? I think that, again, I would go back to the willfulness. No reasonable juror would find that Mr. Arau intended to disobey the law. Whether or not he technically did, I don't think that there's an argument. But I think that there was no evidence in the record given, and you have to look, I understand that we are climbing an uphill battle here as the appellant, but you still have to look at all the evidence, including that ATF notice which was given by the government. That's the government's evidence in this case. And it certainly muddies the water such that it becomes speculative. I mean, what reasonable person self-reports their conduct understanding that they're violating the law? That's— Yes. But as Judge Kuda points out, you know, it really is a challenge to the sufficiency of the evidence, and we would have to conclude that on this record, no reasonable jury could return a verdict of guilty. And, I mean, I find this case very sympathetic. I think this is an enormously complex area of law, and you know, your client has suffered what a felony conviction as a result of it, and I think it's a terrible result, but I'm just not sure that the law contemplates the relief that you're asking for. I see that I'm running out of time, but maybe in my rebuttal I can address the vagueness argument which might address some of those concerns. Thank you. Yes, because I thought that was your main argument. Thank you. Thank you. Good morning. May it please the Court. David Williams for the United States. As perhaps complicated as California law is, this case is not about a California violation. This is about a violation of federal law. And Mr. Arau did not have a federal firearms license. He knew that a federal firearms license was required in order to sell firearms, because he actually applied for such a license so that he could sell them through Ronin Tactical Group. Ronin Tactical Group sold... Okay, but we know that he personally had to undergo the background checks and so on when he obtained the FFL for Ronin Tactical, correct? So there's no question that he would have qualified for a separate, personal FFL? No, we're not contesting that he couldn't have obtained an FFL separate from Ronin Tactical Group. I mean, your argument is a very technical, regulatory violation, and you want to label a man a felon for violating the regulations. Respectfully, I don't think it's a technical violation. I think it's a very straightforward violation. He needed to have a license. He knew that a license was required, and he did not sell without a license. But is it the case that all you have to do is to... That anybody who is a qualifying party for another entity can get a license because he's automatically qualified to get his own license on his own, that there are no other requirements for... No, my understanding is that you would have to do a separate application, and I'm not... Whether he would have passed that application process or not is not part of the record. But he doesn't just automatically get a license because he's a responsible party for Ronin. No, but I guess my question really is focused more on where's the harm here? And if he otherwise qualified the corporation for an FFL, and there's no evidence here that he was passing these weapons along to prohibited individuals, felons and mentally ill people and that sort of thing, he did background checks on all the people that he transferred the guns to. I guess the question at the end of the day really comes down to where's the harm here? I suppose a two-part response. The first part is simply the harm is in going outside of the regulatory scheme, makes it in many ways difficult for the government to know what he is doing. It makes it difficult to verify. For instance, many of these sales conducted in cash outside of the place of business make it more difficult for the government to verify that he is complying with his other requirements. But you don't have any evidence that he didn't comply with all those other requirements because he did background checks on the... He refused to transfer firearms to people that didn't have the safety certificate. Well, as Her Honor mentioned earlier, he did not comply with all of them. He sold some firearms outside of the place of business for Ronin. So he didn't comply with all of them. But the place of business was an auto shop, right? The place of business was not a parking lot. The sales that he conducted... Well, I understand it. But I mean, literally, I don't know what the auto shop looked like, but if somebody was standing in the pit underneath the lift and handed the gun up, your position would be that was a lawful transfer of the firearm because it took place on the premises of the bank. Somehow, is malum prohibitum? No, the reason it's an unlawful transfer is because Mr. Arau did not have a license to transfer. He simply didn't have a license. But if he had a license, he couldn't have made the transfer. It wasn't his license, personally. Yes. Ronin had a license. Mr. Arau did not. And he was selling on his own behalf and not on behalf of Ronin, whatever Ronin might be. Correct. And the jury was... And his defense was that I thought that it was okay because the California law does this and Ronin had the license, and the question of whether or not he willfully violated the law went to the jury. Is that correct? Yes, Your Honor. And I think that when Your Honor is talking about the harm, the harm as in many states, it would have been permissible for Ronin to have sold these weapons. And that would have been how it worked. The harm, I suppose, separate from the regulatory harm contemplated by Section 921A1, by circumventing that scheme, he did violate California law. And that is described, I think... So in the absence... Let me misunderstand. Ronin could have sold one of these firearms to a member of the public. Yes. Or Ronin could have done that. Or Ronin could have done it directly. Yeah. I mean, the problem is he needed to get around California law, which had an exception only for private transactions between private individuals. Right. And that's what the district court said in this case was in his effort to evade California law, he violated federal law. There was no lawful way for him... There was no lawful way to sell 41 off-roster weapons to members of the general public in California. And he took his pick of how he was going to violate the law to sell those guns. And counsel talks about filling out all of these forms as evidence of his good faith and his understanding. And I would point to these forms and say that they actually show the opposite. Many of these forms, for instance, the 4473s, when he is reselling the guns in his personal capacity, they do not say that he is the seller. They list him on the paperwork as the CEO of Ronin. And so these resales, the sales that actually constitute the violations in this case, are only apparent if you cross-reference those 4473s with the California forms, the DROS forms. So if an ATF inspector came in and looked at Ronin Tactical's gun records, they would see 4473s completed as if Ronin Tactical had transferred the weapon. Correct. And in various places, there were serial numbers. So it could have been determined from those forms that he was violating the law. But you would have had to cross-reference serial numbers from one form to another. But the purchaser on the 4473 would have to be Mr. Arrau? Is that how he pronounces it? So the way this worked was that Ronin Tactical sold the guns to Mr. Arrau. And on that initial sale, Mr. Arrau was listed as the purchaser. After that, when Mr. Arrau sold it to the third parties, and I specified two in the brief as examples, but when he sold it to the third parties, those third parties were listed as the purchasers. And Ronin was listed as essentially the seller, because it had the license. Mr. Arrau signed it, and in the signature, listed his title as CEO. So it made it look as though it was Ronin Tactical that sold it. Right. And you can figure out, looking across, comparing the 4473 with the California dross form and the A&D record logbook that Ronin kept, you can piece it together. And that's what ATF and the prosecutor in this case did. But did the California form say something different? Did the California form show him selling it? The California form did, and that was important because the only way to sell this gun under California law to a member of the public is if it's coming from a police officer. And so for the California form, he needed to identify himself as the seller, as a police officer. So the California form, I included a couple of them in the supplemental excerpts of record, but they include a little bit more information than the 4473 does. And looking at all of those forms together, you can figure it out, but one form does not tell you. And I would suggest that there are many cases where accurate record keeping is used as a screen for illegal conduct, that you keep accurate records, and if you divide them in the right places, you can see what has happened. That was the problem with the co-defendant, right? He was making sales to prohibited persons, and those forms clearly would have been false because they wouldn't have identified him. And part of that is, I think, why Mr. Arau had to have a second trial after the first guilty verdict and separately. So the California form was correct, but the federal form was not, and they were different. The federal form was technically correct. It was filled out the way the federal form should be. It's just that the federal form does not have a separate indicator for private party transfers. It basically, it only has a spot to list the purchaser and the license, the FFL. But to the extent he was filling out a form when he sold it privately, he had already transferred the firearm from Ronan to himself. So to show Ronan as the transfer, would not be correct. Is that right? Yes. So the federal form doesn't have separate places on a private party transfer to list the seller, the FFL, and the buyer. And so you just list the FFL on that form. Okay, I understand. And so it's not, I'm not saying that that was a misrepresentation, simply that the additional information necessary to show that he was engaging in this business is not readily apparent from that 4473. You have to look at everything together to... You have to look at everything together, yes. And I think that that's one of the things that makes this sort of the happy case where you can understand the motives and the rationale behind this process is because he went through all of these steps, Ronan over the course of four or five years sold close to 700, had close to 700 firearm sales listed in its A&D book. Of those 700, these were the ones, these off-roster weapons were the ones where they first transferred it to Mr. Arau, and then Mr. Arau privately sold it. The rest of them were sold directly by Ronan to customers. And so the only reason for Ronan to transfer the weapons to Mr. Arau is in order to give this appearance of compliance with both California and federal law. I would like to, just because Your Honor mentioned this question about agency, which cropped up at one point. In the record at ER 553 to 554, there's a point where some testimony that Mr. Arau told the undercover specifically, quote, I'm not selling through the dealer. It's a private party transfer. And I think to the extent there's any concern, all of the sales were conducted that way, but that's a nice black and white one-spot location to look to. In anticipation that some of the vagueness questions might come up in the rebuttal, if Your Honor has questions about it, that I would be happy to answer. But I would start with two overriding points, which is the first that a state law cannot simply make a federal law vague. The federal law is very straightforward. Van Buren upheld it against a vagueness challenge decades ago. The federal law is very straightforward. And there are many cases where state laws are contrary to federal law. Marijuana is one of those examples. California is fine with marijuana in many ways that federal law is not. That does not render the federal laws unconstitutionally vague. The federal law stands on its own in its simplicity. And separate from that, because the jury found this extra scienter requirement, I think an as-applied challenge saying that Mr. Araujo actually didn't understand when the jury found that he did is a much higher burden than even a normal vague as-applied challenge might be. And I don't think that he comes close to that here in light of the extended scheme that he's working with. He got probation? He got two years of probation, which, yes, he got two years of probation. So Mr. Araujo, kind of summing this all up, Mr. Araujo knew that only licensed FFLs can deal firearms. That's why he got one for Ronan in the first place. He also knew that when he sold it, he was doing it in his personal capacity. That's what he told the undercover agent when they were going to sell to him. And that's how he advertised it. These were advertised as private party transfers. And if he knows that he is selling it in his private capacity, as evidenced by all of the paperwork behind it, and he also knows that he doesn't have an FFL, we have easily enough for a 921A1A violation. And I think that finding would also trail onto the vagueness issue. Unless your honors have further questions. Thank you. We have a little over a minute for rebuttal. Thank you. I'd briefly like to address the issue of the 4473 form, because the fact that he signed that as Edward Araujo, CEO of Ronan Tactical, I think is further evidence that he thought that in complying with California law, because on the 4473 forms, he was conducting it as the CEO of Ronan Tactical. But that's not consistent with his statement to some of the purchasers, that it wasn't the entity that was selling them the weapons. These were private sales between himself and the purchasers. Sure. I think our position is that he believed that the FFL covered the sale, because that's how the expert testified, that the FFLs in California cover a private sale. Then why draw the distinction that it was a private sale? Because for California purposes, it had to be. So I think it's a combination. But if I could address the vagueness challenge quickly. I think that the court has to, again, look at that ATF notice. This law wasn't clear for California police officers, and in a vagueness challenge, in a criminal case, you look at it within the context of the conduct. And ATF advised police officers, the government argued in closing, there's no magic number to trigger the anti-dealing statute. That's right. One, two, three, four, five, maybe that's legal. There's no magic number. ATF set the number at 100 firearms in the notice that it sent to California police officers, and it told California police officers, the transfer of more than 100 firearms may constitute potential violations of federal firearm laws to include dealing without an FFL. We're talking about half that number here over the course of two years, and Mr. Arau had a corporate FFL. And so if ATF is going to set the number at 100, clearly Mr. Arau falls below that number, and we would argue that the law is unconstitutionally vague as applied to him. And I see that I'm out of time, so unless the court has any questions, I'll submit. Thank you. Thank you very much. The case of United States versus Edward Arau is submitted, and we are adjourned for this session.
judges: SCHROEDER, TALLMAN, IKUTA